May it please the Court, I'm Kevin Hara from Reed Smith, representing the petitioners, the Cerdas family. I would like to reserve three minutes for rebuttal. No problem, thank you. Your Honors, both the government and petitioners here agree that the BIA committed numerous legal errors and that the appropriate course is to remand this action. However, the parties disagree on the scope of that remand. The government suggests remand for clarification is appropriate, but petitioners will show on this record and the prevailing legal authority that the proper path is remand with instructions to grant. Your Honors, remand for clarification is appropriate in three circumstances, none of which exist here. If the BIA has failed to address or consider an issue, or if it has rendered a decision that is not clearly reviewable, or if there has been a change in the law. Again, none of those is the situation here. Counsel, isn't there something in between remand for granting of relief and remanding just to clarify, and that is remand for reconsideration under the correct legal standards? Why isn't that the right answer for most, if not all, of the errors? Well, Your Honor, you're correct about that. But in this case, the record compels conclusion that the petitioners are entitled to relief. And if we take a look closer at the issues on which the government seeks remand, we'll see as we go through each of those. On the first issue for which the government seeks remand, it relates to the unable and unwilling standard, as it applies to the imposition of an improper evidentiary burden against the petitioners, by requiring essentially them to report Maria's rape to authorities. Well, Bringus Rodriguez clearly holds that there's no reporting requirement. Let me ask you a question about that. The government raises the point that the Attorney General has vacated matter of AB, and it does appear that that original AB1 decision was relied upon below. Do you think that's an intervening change in the law that would justify remanding for clarification or reconsideration? We do not, Your Honor. And the reason is that while the AB matter was overturned, the previous remand that the government requested in 2019, which was unopposed, specifically asked the BIA to consider this question in light of Bringus Rodriguez. And it committed the same legal error it did in its original opinion. And so we do not believe that the AB represents an opportunity for clarification. So is your argument more that the government shouldn't have more bites at the apple, or more that the record compels a conclusion in your client's favor on every issue? Well, it's – they're related, Your Honor, because the government should not have more bites at the apple because the record compels a conclusion in favor of petitioners here. So could I ask you – like, I'm not sure, going back to one of the things you said earlier, you said that every issue has been addressed, and I'm not sure that that's right. Like, whether her social group of family is a valid social group here, I'm not sure that's an issue that has been considered. So is that an issue that the agency should have a chance to consider if we were to disagree with the other things that the agency said? Well, Your Honor, we believe that the BIA has had the fully developed record, and even if its opinion did not reflect all those, it did address that issue because there was a discussion of past persecution and nexus, and we raised that in our original – But the agency found no nexus, and I know you argue that was wrong, and they want a remand on that, but given that they said no nexus, how do we know that they thought the social group was valid? Well, Your Honors, the issue with regard to the social group, the government has conceded that point because we raised that in our opening brief at pages 25, 26, and 30 through 33, and again, the government did not contest these errors that we raised, so we believe that the – Well, but not contesting an error is not the same as agreeing to what is the result of our agreeing that there was an error. In other words, agreeing – I mean, obviously they've agreed that there are numerous errors, but that doesn't really answer the question of what we're supposed to do about it. And in that regard, I have one question that I'd like both counsel to address. I know that earlier, I think much earlier in the process, there was an unsuccessful attempt at mediation through the Ninth Circuit Mediation Program, and my question is whether counsel for both parties or all parties think that it might be fruitful to try again with mediation. Well, for petitioners, we're certainly willing to discuss the issues again with government. I believe last time there was a discussion about administrative closure and the uncertainties that that presents were of some concern, but we're certainly willing to talk with the government again about this. I mean, I believe that we'd be open to that. But if we explore some of the other issues, Your Honor, again getting back to the first issue about reporting, there is not a requirement to report under Bringus-Rodriguez, and especially where to do so would have been futile. The only evidence in the record shows that reporting would have in fact been futile. There was no police station in the village where petitioners resided, and on the infrequent occasions when government officials would visit the town, the informants of the Los Cornudos gang would spy on the inhabitants and report back to the gang, and one inhabitant who attempted to talk with authorities was severely physically assaulted, and another couple, a teacher and his wife who resided in the village, they were murdered. Everyone knew Los Cornudos had done it and informed the authorities of that, yet the authorities did not hold the gang to justice. They didn't even investigate. They did nothing. I mean, this shows that it would have been futile to report anyway, which is why petitioners are entitled to a conclusion that reporting would have been futile. So if we were to remand without an order of granting relief, could the government introduce new country conditions evidence about efforts to control this cartel, or do you think any remand would have to be resolved on the current record? Well, I mean, there is evidence in the current record that it shows that it would be futile. I don't see the need for additional evidence because I think the petitioners believe that the conclusion is warranted in their favor on this issue already, and there was no evidence to the contrary. But my question is, if there were a remand that allowed the agency further consideration rather than a remand to grant relief, as you're asking for, could the agency introduce new evidence? Well, I mean, I think they would have to. I mean, there could be introduction of new evidence on that issue, but I believe that on this record it would certainly favor petitioners. And if we move to the second issue on which the government seeks remand, it relates to, again, the unable and unwilling standard. The government admits that the BIA erred by focusing on national efforts to combat corruption, but minimized evidence of corruption at the state and local levels. Again, this court has recognized that error and rejected it in not only Bringus Rodriguez, but Madrigal and Barajas Romero. Let me ask you, if you believe that the government would be allowed to introduce new evidence because there were erroneous fact findings below or incorrect application of the law below, then why under INS v. Ventura would we go ahead and remand with instructions to grant the petition versus allowing that additional factual development and consideration of those new facts to take place? Well, Your Honor, we believe, actually, that there should not be any new evidence because we believe the record is complete and that the BIA has had enough opportunities to consider it and should not be allowed to continually revisit its decisions when the evidence compels the conclusion in petitioner's favor. This is the more bites at the apple argument, I think. My question before about adding more evidence, I think, probably goes better to this prong that you're talking about now about unable and unwilling. I mean, it's possible the government could have more evidence of new efforts that may or may not show unwillingness and inability, and it would be good if you could point us to some authority that says they don't have the opportunity to add that evidence on remand anyway. Well, there is, with regard to internal relocation, Your Honor, that's the next point, actually. The government admits that the burden should have shifted there to the BIA to show that relocation in Mexico was reasonable, but the government did not. They improperly declined to shift the burden and place the burden on petitioners despite a finding of past persecution. And so why should we say they don't get another chance? Do you have authority that says rather than giving them another chance, we need to just resolve the case now compared to sending it back and letting them offer more evidence if they can? Yes, Your Honor. On page 22 of our reply brief, Mashiri and Babala and Dome indicate that where the government failed to provide that evidence in the first instance, it should not be able to do so on remand. And so that's another reason that we believe on this record clarification is not warranted, but remand with instructions, the grant is. And the only evidence in the record, in fact, shows that the petitioners could not safely relocate because Maria was attending school five hours away from her home village, yet the Los Cornudos gang was able to monitor her movements, track her closely enough so they could kidnap and attack her and sexually assault her. This shows that there really was nowhere safe for the family to relocate. Can I ask you? Oh, go ahead. I was just going to remind you, Professor, if you have a question. Oh, okay. Thank you. The BIA decision says that neither petitioner contested the immigration judge's determination that each asylum applicant failed to show that she could not reasonably avoid persecution through internal relocation. Do you agree with that? Was that an incorrect statement? And if it wasn't raised below, what do you think the consequence should be? We believe it was. We did believe that that was raised below, and we believe that they contested that. And the only evidence, there was no evidence showing otherwise, that petitioners could reasonably relocate. Can you point me to a citation in the record where you did raise that below? Let's see. With regard to the location issue, Your Honor, 206, 183 to 185 and 203 as well. And what are you citing to? The testimony of the petitioners that there was nowhere they could relocate because the gang had a broad network and that it was just not feasible for them to do so safely. Well, I think the question is, I understand there may have been evidence about it, but was it raised before the BIA that you are challenging the IJ's determination on this issue? Or are you raising that issue for the first time on appeal? Well, we definitely did raise it in our opening brief, yes. But you raised it on appeal to this court. I'm asking whether you raised that issue before the BIA. Yes. Let's see. I believe the prior immigration counsel did raise that on the BIA. The BIA says neither respondent has contested the immigration judge's determination that each asylum applicant failed to show that she could reasonably avoid persecution through internal relocation. So was the BIA wrong about that? This is at AR-6. Right. I see that, Your Honor. I think that I will have to respond to that on rebuttal. Okay. We have taken you over your time, but I'll give you two minutes for rebuttal. And let's hear from the government. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Jessica Strokos, and I represent the United States Attorney General. Your Honors, the government believes that this case should be remanded on an open record to the Board of Immigration Appeals under INS V. Ventura, Gonzalez v. Thomas, and SEC v. Chenery. First, to address Judge Graber's question earlier about the unsuccessful mediation attempt, the government attempted mediation in this case in part to see if petitioners were interested in judicial administrative closure, as this Court is aware of. Well, we don't really need or probably should even entertain, you know, a description of what was discussed. The only real question is whether the parties think it would be useful to try again. Your Honor, the government does not believe it would be useful to try again because the ultimate issue in mediation in this case was whether or not was the issue that this Court is considering, whether this Court can remand with instructions or if it should remand on an open record. Well, the whole point of mediation is that it's not limited to those questions. The parties can come up with all kinds of creative solutions if they want to. I mean, it's fine if the government is not interested, but it doesn't matter exactly what the issue is here. I understand, Your Honor. And as we explored other issues in mediation as well, including judicial administrative closure and the possibility there, and ultimately the question did come down to the government does not believe that a remand with instructions to grant is appropriate in this case, and that is what petitioners were asking for in mediation as well as this Court. It seems to me that the parties are at extremes. I mean, one party says we get relief and the other party says we're not even limited to the record. We can just start over again, and it seems to me that there is a recognized in between. Normally, for example, if a petitioner was improperly disbelieved, we normally say go back and analyze the existing record, but treating that person as credible. So we don't start over, you know, with new cross-examination or whatever. I'm not really sure I understand why you think there should be an open record. Your Honor, I do believe that under Ventura, one of the reasons Ventura gave for remanding was specifically so that the agency could take in additional evidence due to the lapse in time. However, in this case, that's not what the government is asking for. The government is asking for a remand based on intervening precedent. There has been ample intervening precedent. That's called reconsideration on the existing factual record, and that is quite different than on an open record. In other words, if there is evidence on this record of past persecution, then there's evidence of past persecution, and the question then becomes how do we deal with that analytically under the new precedent, but I'm not sure why that means an open record in your view. Your Honor, perhaps I spoke poorly. What my intention was to say is that this court should not remand with instructions to grant. The government's position is that, first of all, it cannot remand with instructions to grant a discretionary form of relief that's committed to the discretion of the agency. No, but we have remanded saying that all the criteria for asylum, for example, have been met, and now the Attorney General should exercise discretion whether to go ahead and grant it. I understand that, Your Honor, and in this case, it's factually distinct. In this case, the Board of Immigration Appeals addressed the unable or unwilling requirement and internal relocation. We don't have findings from the Board of Immigration Appeals specifically on the cognizability of the social group nexus, whether the harm indeed rose to the level of past persecution. We're looking at unable or unwilling as part of the persecution inquiry only. So are you—I'm sorry, I'm unclear. Are you asking to have the record be reopened so you can introduce new evidence or not? At this time, no, Your Honor. However, I do believe that that would be permitted under NS Recontura. So if you're not asking to reopen the record, how can you win on this record? I don't see how you're going to win on relocation or government inability and unwillingness or, frankly, on nexus. Your Honor, that's not for me to decide, frankly. The Immigration and Nationality Act puts that question in the hands of the agency, and under the Chenery Doctrine, I cannot speak for the agency. So you think you should just lose— But, counsel, if we're compelled to find—I mean, that's our standard. It's a very high standard, but let's use past persecution as an example. If we're compelled to find that what happened to one of the petitioners under our case law is persecution, then that's what we hold. And so at that point, it's no longer for the agency to say, well, we don't really think it was past persecution. What they do with that next and how that fits into the analysis is for the agency. And ultimately, as I say, the question, even for someone who meets all the criteria, is the exercise of discretion. But if we are compelled to find contrary to the agency's findings, then that's what we have to hold. Your Honor, I understand that, but I would emphasize that in this case, the only holding from the board is with respect to the government action requirement. It's not with respect to the severity of the past harm, to the cognizability of the social group. Well, what is your argument that Maria's past harm is not sufficient for persecution? Your Honor, I don't have an argument there because to make that argument, I would need the board to first say that. And under Chenery, I don't have the board saying that here. Well, the board says she was raped, right? Yes, the board acknowledges. Okay. And we have cases that say that that equals past persecution. So what else is there to decide about whether that counts as past persecution? Your Honor, again, I understand that this court may want to reach that issue, but under Chenery, under Ventura, under Thomas. No, but they've actually already found that she was raped. Yes, Your Honor. The board does acknowledge, I believe it's on page three or four of the record, when the board is going through the facts of this case, it does acknowledge that Maria was raped. However, when it's addressing the findings in this case, when it's affirming the immigration judge, it's discussing the state nexus to persecution, so the government unable or unwilling requirement. And it goes on to discuss only that requirement and then also point out that the petitioners did not raise before the board that they did not challenge the immigration judge's internal relocation. Isn't this distinguishable from INS v. Ventura? Because in that case, the Ninth Circuit made a decision in the first instance. But in this case, we have actually two decisions of the BIA on the main issues. Your Honor, if I'm remembering correctly, I believe the first remand will have done away with the board's first decision and that the second decision of the board is the decision on appeal here. But it contained the same errors, right? It contained the same errors, at least with regard to Bringus-Rodriguez issues. Your Honor, I believe that the first remand was for the board to separately consider the petitioners. And also to consider Bringus-Rodriguez. And to more specifically consider Bringus-Rodriguez. This case, though, part of the reason that the government has asked for remand is the intervening precedent. But it's also, under Bringus, it is actually unclear what should happen in this case. Because at the time that Maria was a minor and was raped, she did actually report the rape to her parent. And Bringus doesn't address what does the parent need to do. And in subsequent case law, this court has held that the petitioner needs to show futility or that it would cause the petitioner further harm if she were to report to the authorities. But not in this specific type of case. That's what the government's asking for remand here on Bringus. It's not that Bringus is controlling. It's that Bringus could inform, certainly because there's a minor that's been raped in this case. But because the minor did actually report to someone, and whereas Bringus-Rodriguez-Castro-Martinez talked about reports to the authorities, what does a parent then need to do? Does the parent— So your opposing counsel was already recounting the evidence about the other person from the village who was killed after reporting. What can you say about this record that shows that there's any chance of showing on this record, if we're not adding new evidence, that there was a willingness and ability to control this cartel if there had been a report? Your Honor, I can only say, as did the Board, which was that there was not necessarily evidence showing definitively that a report to the authorities would have been futile or caused further harm. Well, is there any—I mean, the burden is going to be on the government, right, if she has passed persecution? So the unable or unwilling inquiry is interestingly part of the ambiguous concept of persecution. And so in deciding— No, that's not correct. I understand it. The first question is whether someone suffered past persecution. And maybe they were just, you know, shoved while getting on the bus, and it's not past persecution. But if there was, then the question is, was there government involvement? And those are separate questions. And I would submit to you that I read both of the BIA's decisions as conceding that there was past persecution. For example, in the first one, the BIA says, they offered no evidence or testimony to show that authorities were involved with or even aware of the persecution. And similarly, in the second opinion, they talk about the persecution and whether there was nexus shown between a protected ground and the persecution. So it seems to me they've already found persecution. Your Honor, I would, again, point to pages 6 and 7, where the agency's analysis is contained after reciting, you know, the facts of this case, and that we had asked for them to do on remand. Do you think they're not bound by their finding in the earlier decision that there was persecution, and the only issue is in that opinion whether there was government involvement? I think that this Court's remand did kind of abrogate, if you would. Well, as I say, I read the second one as also containing an acknowledgment, not quite as direct, but also an acknowledgment that there was past persecution. That's how I read page AR5, anyway. Your Honor, so I believe on page 5, the Board acknowledges that they previously affirmed the denial of both claims for the unable-to-learn ruling requirement, and then goes on to restate that the petitioners did not show what they call a state nexus, which is perhaps— A nexus to the persecution. Perhaps. I admitted that it's persecution, but I understand that you read it differently. Yes, Your Honor, and again, the reason that the government reads it differently is because all of the analysis in the Board's decision here is about the government action requirement. That's right. They either found or assumed that there was actually past persecution, and then they asked the question, was there government inability or unwillingness to control it? So that's the key question, but it doesn't undo the finding or assumption that there was persecution. Your Honor, I believe in this—on this decision, I believe that at most we can assume that the— that we can say that the Board assumed harm rising to the level of persecution, that severity element. It does not explicitly analyze or discuss the severity element in its decision. So say we agree with you, because I actually think I might agree with you, that it wouldn't be the government's burden to show the inability and unwillingness. Maybe that's petitioner's burden, but let's just say it's petitioner's burden then. On this record, where we have evidence of other villagers being killed for reporting, no response to reporting, and if you're not going to add new evidence, even assuming it's petitioner's burden, how is there any chance the government wins? Your Honor, that's an inquiry that the Board needs to make under this— But they have made it. They have made it. Clearly, they've made that determination, and if it is not supported by substantial evidence, isn't that our holding, plain and simple, that there is no— that no substantial evidence supports the BIA's finding that the government was unwilling or unable to deal with this problem? Certainly, Judge Graber, this Court is empowered to hold that under its standard of review in addressing the Board's decision. The government's position here is that there is ample intervening precedent, including matter of AB 3. But that's a factual question, not a precedential question. Yes, Your Honor. I guess what I'm trying to say is that the government's position, when looking at the unable or unwilling inquiry, is that remand is counseled here, because there is so much intervening precedent. There's the intervening matter of AB 3 decision that vacated one of the cases that the Board very heavily relied on in this case, and that the Board should be given another opportunity. So do you think there's any limit on how many times the Board can just say the wrong thing and then ask for a remand and do it again? I'm certain that there is, Your Honor. But I will say that I believe there is precedent in this Court. You were speaking earlier about the one bite at the apple concept. And I do believe, and I may have to provide a supplemental citation of authority, that this Court has addressed that the government doesn't just get one bite at the apple. Well, but we also have, I think your opposing counsel mentioned, Lopez, Mashiri, Babala. All of those cases say when the government has already had multiple chances, they don't get more chances. Your Honor, again, I think I would need to provide a citation of supplemental authority, but I believe if that is indeed what those cases state, that there may be an intra-circuit conflict here that you may have identified. Any other questions? No further questions. Okay, thank you very much. Thank you very much. We've taken you over your time. Let's hear from Petitioner's Counsel. We'll have two minutes for rebuttal. Thank you, Your Honors. Well, I'd just like to reiterate that, as you just mentioned, the Mashiri, Babala, and Dohm cases, they do indicate that there's no justification for additional evidence on remand. Counsel, did you find the record citations regarding raising the internal relocation issue to the BIA upon appeal from the IJ's decision? I have not admittedly, Your Honor, but I seem to recall that the petitioners were represented by a different counsel then. But, you know, I would like to just conclude with the point that the rationale that remand for clarification is not appropriate here is supported by this Court's ruling in Navas v. INS, and that case really underscored the importance of finality in judicial economy. In the context of saying it's not efficient to have incremental decision-making, unnecessary and inefficient remands to allow the BIA to revisit its decisions over and over, because especially where there has been a fully developed record and the BIA has had multiple chances to consider these issues. And we also cited a supplemental authority. Let me ask you a question. If you didn't raise the internal relocation issue before the agency and you're raising it now for the first time on appeal, why shouldn't the government be able to? I guess they don't want to supplement the record, but they haven't really been able to respond to that with any facts if they were to choose to do so. Is that right? If you didn't raise it below. Well, they did have a chance to provide evidence below, but there was no evidence other than the evidence showing relocation would not be reasonable, Your Honors, and that's why we believe there's no need for clarification. But they didn't do that below because the IJ and the BIA got it wrong, right? They said the burden was on Maria, even though the burden should have been on the government. I mean, they may not have introduced evidence because there was a mutual misunderstanding amongst all the parties and the court that they didn't have to because Maria bore the burden. Well, Your Honors, they did find that Maria had suffered past persecution. So when they made that finding and the government concedes this, the regulations provide that the burden should have shifted then. Right, but it seems like the IJ got it wrong in not shifting the burden, and so then the government may not have introduced evidence at that point because it didn't think that it had to. Well, it did have the opportunity to do so on at least those two occasions, the original decision and the remand. So we just don't believe that it should be allowed another opportunity. Thank you, Your Honors. Thank you, counsel. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: GRABER, FRIEDLAND, KOH